IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

FILED
U.S. DISTRICT COURT

2006 NOV -9 P 4:56

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | CASE NO.: CR506-5 |
| CHARLES JAMES COOPER<br>NATHAN GLOVER<br>KIEEMA DAVIS<br>LASHONA COOPER<br>WILEY J. STRICKLAND<br>ANTHONY WILLIAMS<br>CHARICE BOYD | : | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Wiley Strickland ("Strickland") is charged with conspiracy to possess with intent to distribute, and to distribute 50 grams or more of cocaine base (crack), in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1). Strickland filed a Motion to Suppress. The undersigned conducted an evidentiary hearing on August 10, 2006, at which Stephen Tinsley ("Tinsley"), a Special Agent with the Drug Enforcement Agency, testified. Strickland filed a post-hearing brief, and the Government responded.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearing established the following:

The Ware County Drug Unit received information from a confidential informant that James Cooper ("Cooper"), a co-defendant in this case, was buying or selling

AO 72A
(Rev. 8/82)

crack cocaine; the Ware County officers needed assistance and money to further their investigation. A member of this unit contacted Tinsley's office for that purpose. Tinsley testified that a confidential informant began making controlled purchases with Government funds. Tinsley stated that he and other officers involved in this investigation negotiated a transaction for the purchase of two (2) ounces of crack cocaine. "Numerous" phone calls were placed to Cooper, who "indicated that he only had one ounce of that cocaine at that particular time", but he was to "meet with another one of his sources to receive an additional ounce" to complete the request for two (2) ounces. (Doc. No. 108, p. 9.) Cooper and the confidential informant arranged to meet at a Kroger parking lot while Tinsley and other officers conducted surveillance. Tinsley testified that he was in contact with the confidential informant via a "listening device", and the confidential informant said that Cooper just told him that he had one (1) ounce and was meeting with someone else to get the other ounce. (Doc. No. 108, p. 10.) Thereafter, Cooper and his wife (another co-defendant) pulled into the Kroger parking lot driving a Buick; someone driving a white Chevrolet Camaro pulled into the parking lot directly behind the Coopers. Tinsley stated that Cooper got out of the Buick on the passenger's side and met with the driver of the Camaro, who turned out to be Strickland. Tinsley testified that Cooper then approached the confidential informant's vehicle. Tinsley also testified that Cooper tried to make the sale to the informant, but he saw officers coming across the parking lot. Cooper went back to his car and sat down. Tinsley stated

2

that Strickland was standing between the Coopers' Buick and his own Camaro, and, as officers approached Strickland, he threw down a "small bag of marijuana" and began running. (Doc. No. 108, p. 11.) After Strickland was arrested, another officer transported Strickland to the Ware County Jail. The other officer searched the backseat of his patrol car after Strickland was inside the jail to ensure "nothing was left in the backseat area for . . . evidentiary protection." (Doc. No. 108, p. 15.) The other officer found a vial containing approximately fifteen (15) pieces of crack cocaine.

Strickland contends that officers lacked probable cause to arrest him, and, as a result, the drugs officers seized should be suppressed. Strickland also contends that any drugs found after he was arrested should be suppressed under the "fruit of the poisonous tree" doctrine.

## DISCUSSION AND CITATION TO AUTHORITY

Strickland asserts that, because the Government stated at the hearing before the undersigned that whether the area where he was arrested was a high crime area and that he ran upon seeing the officers are irrelevant, the Government has "narrowed the focus exclusively to Agent Tinsley's observation" of Strickland throwing the marijuana. (Doc. No. 110, p. 2.) Strickland contends that the Court should not consider any of Tinsley's testimony concerning the alleged flight from the scene or any events leading up to this alleged flight, including his meeting with Cooper in the Kroger parking lot. Strickland avers that it is unreasonable that an

3

AO 72A
(Rev. 8/82)

officer could conclude from twenty (20) feet away that "a bag measuring an inch to an inch-and-a-half long by three centimeters wide contained a green, leafy substance." (Doc. No. 110, p. 4.) Strickland alleges that the officers' primary focus was on Cooper, not him. Strickland asserts that the Court should note that Tinsley's observations were made at night even though he testified that the parking lot was well-lighted.

The Government contends that Tinsley observed what he believed to be a crime and proceeded to stop Strickland. The Government asserts that it is purely academic whether Tinsley had reasonable suspicion or probable cause because the facts of this case support the lawfulness of Tinsley's actions under either analysis.

There are three types of police-citizen encounters "which invoke the [F]ourth [A]mendment: police-citizen communications involving no coercion or detention; brief seizures or investigative detentions; and full-scale arrests." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989). Investigative detentions involve "reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave." Id. (citing Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "In order to justify a [F]ourth [A]mendment seizure, the government must show a reasonable and articulable suspicion that the person has committed or is about to commit a crime." Id.

Tinsley's testimony at the evidentiary hearing, which was not contradicted, reveals that he had a "reasonable and articulable suspicion" that Strickland had

4

committed a crime. See id. Tinsley's confidential informant had arranged a buy with Cooper for two (2) ounces of crack cocaine. Cooper informed the confidential informant that he had a portion of the requested amount but was going to meet with someone to obtain the remaining portion. At the time of the arranged meeting between Cooper and the confidential informant in the Kroger parking lot, Strickland followed Cooper into the parking lot. Cooper and Strickland had contact with each other before Cooper approached the confidential informant's vehicle. Strickland threw to the ground a bag of what Tinsley, who has been in law enforcement for nearly nineteen years and who testified that he was no more than ten (10) feet away from Strickland at the time (Doc. No. 108, pp. 11-12), believed to be marijuana after Strickland noticed the presence of law enforcement officers. Tinsley's actions were supported by the

reasonable suspicion standard[1] of Terry.

In addition, Tinsley testified that, after Strickland was arrested, a Waycross Police Department officer transported Strickland to the Ware County Jail in the backseat of his patrol car. Tinsley also testified that the officer searched the area of his patrol car where Strickland was sitting after he took Strickland inside of the jail.

---

[1] Even if the Government had to satisfy the higher "probable cause" standard, it appears that Tinsley's testimony would satisfy this burden as well. "[A]n arrest [supported by probable cause] must be objectively reasonable based on the totality of the circumstances." United States v. Dunn, 345 F.3d 1285, 1290 (11th Cir. 2003). The probable cause standard "is met when the facts and circumstances within the officer's knowledge, of which he . . . has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (internal citation and punctuation omitted). Probable cause "requires more than suspicion," but "does not require convincing proof, and need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction." Id.

5

Tinsley further testified that this officer routinely searched his patrol car after each stop to ensure nothing was left in the backseat area for "evidentiary protection." (Doc. No. 108, p. 15.) The officer found a vial containing approximately fifteen (15) pieces of crack cocaine.

Tinsley's testimony regarding another officer's routine practice of searching his patrol car after each stop is sufficient to allow the introduction of testimony during the trial of this case that a vial of crack cocaine was found in the backseat of this officer's patrol car. FED. R. EVID. 1101(d)(1). However, it will be for the jury to determine whether the vial of crack cocaine was Strickland's and whether this evidence is sufficient to convict Strickland of the crimes with which he has been charged. See United States v. Gonzalez, 617 F.2d 104, 106 (5th Cir. 1980) (finding that the routine practice of searching the patrol car before and after an officer's shift was sufficient evidence to allow a jury to find the defendant guilty of possession of counterfeit currency when the defendant was the only person in the backseat of the patrol car during the officer's entire shift). The crack cocaine found in the officer's patrol car should not be subject to suppression.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Strickland's Motion to Suppress (Doc. No. 94) be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 9th day of November, 2006.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)